IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Local 743 International Brotherhood of Teamsters, | No. 15 C 2457 |
| | Judge Virginia M. Kendall |
| v. | |
| Rush University Medical Center. | |

## MEMORANDUM OPINION AND ORDER

Pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), Plaintiff Local 743 International Brotherhood of Teamsters ("Union") filed this complaint against Rush University Medical Center seeking to compel arbitration of issues arising between the Union and Rush regarding the negotiation of wages, hours, and coalition of employment for patient care technicians. Rush seeks to dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted. For the following reasons, Rush's motion to dismiss [14] is denied on both grounds.

## BACKGROUND[1]

The Union is a labor organization that represents employees regarding grievances, wages, hours, and other terms and conditions of employment. (Dkt. No. 19, ¶ 4). Rush is an academic medical center that provides medical care, treatment, and education for students of medical sciences. (*Id.* at ¶ 5). Both parties have principal offices in Chicago, Illinois. (*Id.* at ¶¶ 4-5). In 1967, the Union and Rush's predecessor, St. Luke's Hospital, entered into an Election Agreement ("Agreement"), establishing an ongoing collective bargaining relationship that is still

---

[1] The Court takes the following allegations from Plaintiff's first amended complaint and treats them as true in evaluating this motion. *See Vinson v. Vermillion County, Ill.*, 776 F.3d 924, 925 (7th Cir. 2015).

in existence. (*Id.* at ¶¶ 6, 12). The unit of Rush employees originally eligible for Union representation was:

> All housemen, maids, dietary workers, laundry workers, messengers, elevator operators, maintenance employees, central service technical assistants, nurses aides, orderlies, aides, helpers, attendants and unit clerks at Presbyterian-St. Luke's Hospital. The unit specifically excludes supervisors and all other employees of the hospital. (*Id.*, Ex. A, § I).

If a majority of the members in this unit voted to be represented by the Union, the Union agreed not to:

> …in any way attempt to interfere with the Hospital's flexibility in the use of its personnel when patient needs reasonably require such flexibility and that it will not restrict the Hospital in the development of new classifications, the use and development of new methods, procedures, or equipment, and the training of personnel. (*Id.*, Ex. A, § VIII).

To try and prohibit work stoppages, strikes, or slowdowns of any kind during negotiation or for any other reason, the Agreement further provides:

> The Union agrees that, should it win the election, there will be no work stoppages, strikes or slowdowns of any kind for any reason at the Hospital during the course of any future contract negotiations, but that, should any matters remain unresolved at any such negotiations after a reasonable period of good faith collective bargaining and an impasse has been reached such matters must be submitted by either party to an impartial arbitrator to whom all of the facts will be presented and whose decision with respect to such matters will be final and binding upon both parties." (*Id.*, Ex. A, § IX).

The Hospital agreed to the same terms, stating in a later paragraph that: "any unresolved issues shall be submitted to binding arbitration as provided in paragraph IX hereof." (*Id.*, Ex. A. §§ X, XII).

The original Union vote, which was affirmed by an arbitrator according to the Agreement, resulted in the majority of the unit wishing to be represented by the Union. (Dkt. No. 14, ¶ 10). Upon the Union's successful election, the parties—in accordance with the Agreement—proceeded to negotiate a collective bargaining agreement ("CBA"). (*Id.* at ¶ 11).

Since the formation of the Agreement, the parties have continuously negotiated and updated their CBA every three years, adding and modifying the job classifications included in the appropriate bargaining unit. (*Id*. at ¶ 12). The unit currently includes:

> ...all environmental aides, environmental specialists, environmental technicians, dietary workers, laundry workers, transport specialists, elevator operators, maintenance employees, central service technical assistants, nursing attendants, psychiatric aides, community health aides, lab helpers, operating room attendants, mail room clerks, unit clerks, geriatric technicians, patient services associates (PSAs), physical therapy aides, rehabilitation aides, pediatric assistants, pediatric nursing assistants, certified nursing assistants (CNAs), truck drivers (laundry & SPD), food service assistant I lead, food service assistant II lead, environmental specialist lead, transport specialist lead, unit clerk lead, and journeymen lead. The unit specifically excludes supervisors, temporary and casual employees, regular part-time employees normally working less than seventeen (17) hours per week, and all other employees of the Hospital. (Dkt No. 19, Ex. C., Section 2, Recognition, at 1).

On or about July 2, 2014, the Union filed an NLRB petition seeking to represent patient care technicians ("PCTs") employed at Rush in July of 2014. (Dkt No. 24 at 3). Rush opposed the petition. (*Id*.) The Acting Regional Director for National Labor Relations Board Region 13 ordered an election despite the opposition and the Board denied Rush's request for review of the decision in a 3-2 vote. (*Id.*) On August 27 and 28, 2014, the majority of PCTs voted to join the Union in a self-determination election, and the Regional Director for NLRB Region 13 issued an amended certification of representation on October 8, 2014 certifying the Union as the collective bargaining representative for "all full-time and regular part-time Patient Care (PCT) employees," but not "Nurse Assistant II (NA II), all other employees, office clerical employees, guards, and professional employees and supervisors as defined in the Act." (Dkt. No. 14, ¶ 18).

Rush refused to bargain with the Union over PCTs, arguing that the self-determination election was improper. (Dkt. No. 24 at 4). In response, the Union filed an unfair labor practice charge with the NLRB on October 17, 2014. (*Id*.) On February 27, 2015, the NLRB issued a

decision and order requiring Rush "to bargain on request with the Union and, if an understanding is reached, to embody the understanding in a signed agreement." (Dkt. No. 24-2 at 3). Rush appealed the Board's decision to the District of Columbia Circuit Court on March 9, 2015. (Dkt. No. 24 at 5). The appeal is pending and the NLRB has since filed a cross-application for enforcement of its decision and order, in which the Union has intervened. (*Id.*) On March 23, 2015, the Union filed this suit to compel arbitration regarding the negotiation of wages, hours, and coalition of employment for PCTs pursuant to the parties' Agreement and CBA. (*Id.* at 4). Rush now seeks to dismiss this case for lack of jurisdiction due to the pending appeal in the D.C. Circuit Court of Appeals or, alternatively, for failure to state a claim upon which relief can be granted. The motion is denied on both grounds.

## DISCUSSION

**I. Subject Matter Jurisdiction**

Rush first challenges this Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The party seeking to bring suit in a federal forum bears the burden of establishing federal subject matter jurisdiction. *See Farnik v. F.D.I.C*, 707 F.3d 717, 721 (7th Cir. 2013). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those allegations in favor of the plaintiff. *See Storm v. Storm*, 328 F.3d 941, 943 (7th Cir. 2003). In accepting allegations as true, the Court "may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists" in a motion based on these grounds. *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 701 (7th Cir. 2003).

Plaintiff bears the burden of establishing proper jurisdiction and jurisdictional issues cannot be waived.

The Union brings this suit under Section 301 of the LMRA, seeking to compel arbitration of a bargaining dispute with Rush pursuant to the terms of the parties' Agreement. Section 301 grants this Court subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…" 29 U.S.C. § 185(a). The Section 301 grant of jurisdiction, however, is "extremely limited" to only allegations of a violation of a labor agreement. *See Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW*, 523 U.S. 653, 661-62 (1998). Rush argues that this dispute is beyond the scope of this Court's Section 301 jurisdiction because it is primarily representational and therefore within the exclusive jurisdiction of the NLRB and the D.C. Circuit Court where the parties' current appeal is pending. *See, e.g., J.F. Edwards Const. Co. v. Int'l Union*, No. 03 C 6058, 2004 WL 1444874, at *4 (N.D. Ill. June 28, 2004) ("Where a labor dispute is arguably representational, a district court should not exercise jurisdiction") (citing *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) ("As a general rule, federal courts do not have jurisdiction over activity which is arguably subject to § 7 or § 8 of the NLRA, and they must defer to the exclusive competence of the National Labor Relations Board." (internal quotations and citations omitted)); *Loewen Group Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1425 (7th Cir. 1995) (indicating that when an activity is arguably prohibited under the National Labor Relations Act, state and federal courts must defer to the exclusive jurisdiction of the NLRB).

The issue before this Court is contractual and fits squarely within its jurisdiction under Section 301. Yes, there is a collateral representation issue percolating: namely, whether the PCTs are part of the appropriate bargaining unit. That issue, however, has already been resolved by the

Board. On August 27 and 28, 2014, the majority of PCTs voted to join the Union in a self-determination election and the Regional Director for NLRB Region 13 issued an amended certification of representation on October 8, 2014 certifying the Union as the collective bargaining representative for "all full-time and regular part-time Patient Care (PCT) employees," but not "Nurse Assistant II (NA II), all other employees, office clerical employees, guards, and professional employees and supervisors as defined in the Act." (Dkt. No. 14, ¶ 18).

Pursuant to 29 U.S.C. § 160(e-f), Rush is currently seeking review of the Board's order in the D.C. Circuit Court and the Board and Union are seeking enforcement of the order in that same Court. The pendency of those proceedings, however, "shall not, unless specifically ordered by the court, operate as a stay of the Board's order." 29 U.S.C. § 160(g). This Court sees no evidence in the record before it that a stay has been entered or even entertained by the D.C. Circuit Court. Absent such a stay, Rush is not relieved of its obligations under the Board's order merely because the appeal or enforcement action are pending. *See NLRB v. Winn-Dixie Stores, Inc.*, 361 F.2d 512, 516 (5th Cir. 1966) (holding that employer not "relieved of its duty to obey the order to bargain during the pendency of the proceedings to enforce the earlier order"), cert. denied, 385 U.S. 935, (1966), citing *NLRB v. Am. Mfg. Co.*, 351 F.2d 74, 81 (5th Cir. 1965); *Old King Cole, Inc. v. NLRB*, 260 F.2d 530, 532 (6th Cir. 1958) (filing petition for review of an order of the Labor Board does not operate as a stay of the Board's order, consistent with Section 10(g) of the NLRA). [2]

---

[2] The Court denies Rush's cursory request to this Court for a stay of these proceedings pending resolution of the appeal before the D.C. Circuit Court. This Court has substantial discretion to determine whether to stay proceedings and manage its docket, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936), but such action is not warranted in this case. The NLRB has already made its ruling with respect to Union representation of the PCTs in accordance with the Act and the relief sought here is different than the relief at issue in the D.C. Circuit Court. Should the ruling by the D.C. Circuit Court impact how the parties wish to proceed in this case, they are welcome to make any motions they think appropriate at that time. Whatever risk of judicial inefficiency exists in denying the stay is outweighed by the burden of staying this case pending resolution of the appeal that may or may not impact this litigation. *See, e.g., Int'l Brotherhood of Elec. Workers, Local 134, AFL-CIO v. Chicago Zone of Marketing*, 535

Rush insists that until the Board's order in enforced by the D.C. Circuit Court or until Rush agrees to comply with it, this Court "lacks jurisdiction to compel Rush to comply with its terms by bargaining." (Dkt. No. 24 at 10). This argument, however, fatally mischaracterizes the nature of this action. The Union is not seeking to compel enforcement of the Board's order. Instead, it is seeking to compel compliance with an arbitration provision in the parties' underlying Agreement; a dispute over which this Court is authorized to preside under Section 301. Rush's motion to dismiss for lack of jurisdiction is denied.

**II. Failure to State a Claim**

Alternatively, Rush argues that the Union has failed to state a claim upon which relief may be granted in violation of Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When discussing the merits of a motion to dismiss, the Court must view the facts in the light most favorable to the non-moving party and facts alleged must be accepted as true. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 619 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). While factual allegations do not need to be detailed, the plaintiff must put forth facts that "when accepted as true…state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). If the facts pled in the complaint permit the Court to reasonably infer the defendant is liable and relief can be granted, it is facially plausible. *Id.* at 678.

A straightforward breach of contract suit brought under Section 301, as in this case, "closely resembles an action for breach of contract cognizable at common law" and is governed

---

F. Supp. 16, 22 (N.D. Ill. 1981) (refusing to stay proceedings until the Board ruled on the employer's unit clarification petition).

by federal common law. *See Olson v. Bemis Co., Inc.*, 2015 WL 5011951, at *6 (7th Cir. Aug. 25, 2015), citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). Here, the Court's eventual inquiry will be "strictly confined to the question whether the reluctant party did agree to arbitrate the grievance." *See United Steelworkers of Am. v. Warrior & Golf Navigation Co.*, 363 U.S. 574, 582 (1960). Rush insists that the Union fails to state a claim upon which relief can be granted because "even if PCTs are represented, they are not covered by the 1967 Agreement [and therefore not subject to arbitration] by virtue of the NLRB certification." (*See* Dkt. No. 24 at 12). This argument highlights the difficult position that the PCTs are currently in, but it is insufficient to defeat the case at this early stage. PCTs are obviously not identified by name in the Agreement and they are similarly not included in the updated list of classifications in the parties' most recent CBA. They have been included in the bargaining unit by the Board, but negotiations have not yet resulted in their being added to the CBA. The PCTs are stuck in purgatory.

The Court will not speculate at this early juncture whether the Agreement does in fact warrant arbitral reprieve from this holding pattern. It is sufficient at this stage merely that such relief is plausible on the face of the complaint. The PCTs are not named in the parties' Agreement or CBA, but the Agreement does require that "[a]ll disputes concerning the interpretation, application or violation of this Agreement shall be immediately submitted to binding arbitration as provided in paragraph IX hereof." (Dkt. No. 19-1, ¶ XIV). More than one provision refers the parties to arbitration to resolve negotiation issues at any time for any reason during any future negotiations. (*See id.* at ¶¶ IX-XII). Reading the facts in the light most favorable to the Union, it is plausible that the Agreement contemplated that future job classifications would join the Union and that negotiation disputes over the terms and conditions

of employment for those job classifications would be submitted to arbitration. The Union alleges in its First Amended Complaint that when new and modified job classifications have been added thus far to the bargaining unit over the course of its relationship with Rush, "the parties negotiated collective bargaining agreement provisions to apply to them and at all material times herein any disputes arising from such negotiations were subject to resolution by interest arbitration pursuant to the terms of ¶¶ II, X, XI and XII of the Agreement." (Dkt. No. 19, ¶ 15). Maybe the parties have routinely applied the arbitration or other terms of this Agreement to new job classifications that sit in the same limbo where the PCTs now reside; maybe not. Suffice it to say that at this early stage, the Union has strung together sufficient facts to state a cause of action upon which relief can be granted. The motion to dismiss for failure to state a claim upon which relief may be granted is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [14] is denied.

Date: 10/19/2015

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois