IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Local 743 International Brotherhood of Teamsters, | ) ) ) ) No. 15 C 2457 ) ) Judge Virginia M. Kendall |
| v. | ) ) |
| Rush University Medical Center. | ) |

# MEMORANDUM OPINION AND ORDER

Plaintiff Local 743 International Brotherhood of Teamsters ("Union") seeks to compel Rush University Medical Center ("Rush" or "Hospital") to submit to arbitration its obligation to arbitrate any issues that arise during the negotiations regarding the collective bargaining agreement for Rush's Patient Care Technicians ("PCTs") and asks the Court to declare the rights of the parties pursuant to the Declaratory Judgment Act. (Dkt. 76.) Rush seeks to dismiss the Second Amended Complaint ("SAC") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Prior to the SAC, parties filed Cross-Motions for Summary Judgment. [58, 60] For the following reasons, Rush's Motion to Dismiss [81] is granted.

## BACKGROUND

For the purposes of a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the plaintiff. *See Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (citing *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002)). The Union negotiates grievances, wages, hours, and other terms and conditions of agreement between Rush and certain groups of its employees. (Dkt. 76, at ¶ 4.) Rush is a medical center that provides medical care, treatment, and education for students of medical sciences. (*Id.* at ¶ 5.) On April 25, 1967, the Union and Rush's

1

predecessor, Presbyterian-St. Luke's Hospital, entered into an Election Agreement ("Agreement") that established an ongoing collective bargaining relationship. (*Id.* at ¶ 6; Dkt. 76-1, Ex. A.) The Unit of Hospital employees originally eligible for Union representation did not include PCTs, and explicitly excluded from its terms "all other employees of the hospital" who were not listed as eligible. (*See* Dkt. 76-1, Ex. A, ¶ I.) The Agreement provided that, should the Union win the election:

> [T]here will be no work stoppages, strikes or slowdowns of any kind for any reason at the Hospital during the course of any future contract negotiations, but that, should any matters remain unresolved at any such negotiations after a reasonable period of good faith collective bargaining *and an impasse has been reached* such matters must be submitted by either party to an impartial arbitrator to whom all of the facts will be presented and whose decision with respect to such matters will be final and binding upon both parties.

(*Id.*, Ex. A, ¶ IX (emphasis added).) The Union also agreed that unresolved issues and disputes arising from for any collective bargaining agreement ("CBA") negotiations between the Hospital and the Union would be submitted to arbitration subject to paragraph IX. (*Id.*, Ex. A, ¶¶ X, XI, XII.) Similarly, the Hospital agreed that: "All disputes concerning the interpretation, application or violation of this Agreement shall be immediately submitted to binding arbitration *as provided in paragraph IX hereof.*" (*Id.*, Ex. A, ¶ XIV (emphasis added).)

In the original election, a majority of the Unit voted to form the Union, and the parties negotiated a CBA in accordance with the 1967 Agreement. (Dkt. 76, at ¶¶ 10-11.) Since then, pursuant to the terms of the Agreement, the parties have negotiated CBAs approximately every three years on behalf of the employees in the Unit represented by the Union. (*Id.* at ¶ 12.) The parties' most recent CBA, effective between September 5, 2013 and June 30, 2016, explicitly excludes from the Union any job classifications that are not included in the Unit. (Dkt. 76-1, Ex.

C, at § 2.1.) On August 27 and 28, 2014, a majority of PCTs voted to join the Union in a self-determination election held by the National Labor Relations Board ("NLRB"). (*See* Dkt. 76, at ¶¶ 18-19.) An NLRB regional director issued an amended certification of representation on October 8, 2014, which certified the Union as the collective bargaining representative for "[a]ll full-time and regular part-time Patient Care (PCT) employees who are employed by [Rush] . . . ." (*See* Dkt. 76-2, Ex. B, at 1.) The CBA in effect at that time provides in pertinent part that:

> The . . . [E]lection [A]greement dated April 25, 1967 . . . is made a part of this Agreement with the same force and effect as though set forth in full herein and notwithstanding anything to the contrary contained in this Agreement shall survive this and any future Agreements . . . .

(*See* Dkt. 76-3, Ex. C, § 14.3.) On or around October 14, 2014, the Union demanded that Rush negotiate employment terms and conditions for the PCTs, but at that point, Rush refused to bargain or submit the issues to interest arbitration. (Dkt. 76, at ¶¶ 25-26; Dkt. 82, at 3.) Rush appealed the NLRB certification to the United States Court of Appeals for the District of Columbia. (Dkt. 76, at ¶ 27; Dkt. 82, at 3.) On August 16, 2016, the D.C. Circuit upheld the NLRB's election certification and granted the Union's request to enforce the bargaining order regarding the PCTs.[1] (Dkt. 76, at ¶ 28; Dkt. 82, at 3.)

On August 30, 2016, Rush "agreed to bargain with the Union" about the PCTs. (Dkt. 76, at ¶ 29; Dkt. 82, at 3.) However, Rush allegedly refuses to recognize that the Agreement requires the parties to submit any disputed bargaining issues to interest arbitration. (Dkt. 76, at ¶ 30; Dkt. 82, at 3.) The Union alleges that this refusal "has a negative impact on the parties' bargaining relationship and the [Union]'s ability to effectively bargain during contract negotiations" for the PCTs. (Dkt. 76, at ¶ 34.) The Union also alleges that the bargaining

---

[1] *See also Rush Univ. Med. Ctr. v. Nat'l Labor Relations Bd.*, 833 F.3d 202 (D.C. Cir. 2016) (finding that NLRB did not arbitrarily decide to uphold its Regional Director's determination that PCTs constituted an appropriate voting group for self-determination to join the bargaining unit).

demands it might submit to an interest arbitrator "will differ from those that will be presented in negotiations in the absence of interest arbitration." (*Id.* at ¶ 35.)

The Union filed its Second Amended Complaint ("SAC") for this suit on September 21, 2016, subsequent to the Union's and Rush's Motions for Summary Judgment, both filed on July 15, 2016. (*Id.*; Dkt. 58; Dkt. 60.) On October 11, 2016, Rush filed this Motion to Dismiss. [81]

## LEGAL STANDARD

Courts may dismiss complaints for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "[A] plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Id.* (quoting *Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987)). The Court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Miller v. F.D.I.C.*, 738 F.3d 836, 841 (7th Cir. 2013) (internal quotation marks and citation omitted).

## DISCUSSION

In Count I, the Union seeks to compel arbitration so that Rush will be ordered to acknowledge its obligation to submit CBA negotiation issues to arbitration. (Dkt. 76 at 6, ¶ 30.) In Count II, the Union asks the Court to declare the rights of the parties under the Election Agreement pursuant to the Declaratory Judgment Act. (*Id.* at 7, ¶ 35.) Rush moves to dismiss the SAC for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[2] (*See* Dkt. 82, at 3.) Doing so would render the parties' prior Cross-Motions for Summary Judgment moot.[3]

---

[2] According to its Motion to Dismiss, Rush moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. (*See* Dkt. 81, at 1.) The Court recognizes this Motion as pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, based on the substance of Rush's Memorandum in Support of Motion to Dismiss Second Amended Complaint. (Dkt. 82, at 3.) *See* Fed. R. Civ. P. 12(b)(1).
[3] When a court dismisses an action, pending motions for summary judgment may be treated as moot. *See e.g.*, *American Fletcher Mortg. Co., Inc. v. U.S. Steel Credit Corp.*, 635 F.2d 1247, 1251-1255 (7th Cir. 1980); 10A

4

**I. Jurisdiction to Compel Arbitration Pursuant to Section 301 of the Labor Management Relations Act**

The Union brings this suit under Section 301 of the Labor Management Relations Act ("LMRA"). Section 301 grants courts "extremely limited" subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce…" 29 U.S.C. § 185(a); *see Textron Lycoming Reciprocating Engine Div., Avco Corp., v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 661-62 (1998). Under the LMRA, federal courts have the power to compel arbitration over CBAs. *See Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457-59 (1957). Although suits about contract interpretation and validity can provide the basis for Section 301 jurisdiction, the suit must present a violation of the contract that requires adjudication. *See Textron*, 523 U.S. at 657; *Int'l Bhd. of Electrical Workers, Local 481 v. Sign-Craft, Inc.*, 864 F.2d 499, 501 (7th Cir. 1988); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1510 (7th Cir. 1991). Courts look to the provisions of the contract to determine whether a violation exists and, if so, whether that violation requires arbitration. *See Chicago Typographical Union*, 935 F.2d at 1510. Parties cannot be compelled to arbitrate any dispute which they have not agreed to submit as a matter of contract. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). While a presumption exists in favor of arbitrability in the case of an ambiguous arbitration clause, an "express provision excluding a particular grievance from arbitration" can overcome this presumption. *Id.* at 650 (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). A court errs in compelling parties to "arbitrate the arbitrability question" when the parties did not intend to arbitrate such matters. *Id.* at 651.

---

Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2713 (4th ed. 2016) (citing Fed. R. Civ. P. 56; *Volvo GM Heavy Truck Corp. & U.S. Dept. of Labor*, 118 F.3d 205 (4th Cir. 1997)).

The Union and Rush dispute whether they have formed a valid contract applicable to the CBA negotiations for PCTs via the 1967 Election Agreement.[4] Regardless, assuming that the parties have formed a valid, applicable contract, the facts as presented in the Union's SAC fail to allege a contract violation that requires arbitration.

The Election Agreement provides that, "during the course of any future contract negotiations . . . should any matters remain unresolved . . . after a reasonable period of good faith collective bargaining *and an impasse has been reached* such matters must be submitted by either party to an impartial arbitrator . . ." (emphasis added) (Dkt. 76-1, Ex. A, ¶ IX.) Any of the provisions in the Agreement requiring arbitration provide that unresolved issues shall be submitted to arbitration as provided "in paragraph IX hereof." (*See id.* at ¶¶ X, XI, XII, XIV.) Thus, any negotiations dispute under the contract would need to reach impasse before the parties must submit their dispute to arbitration.

There is no impasse, as both parties provide as of the SAC that Rush agrees to bargain with the Union over the CBA regarding the PCTs. (*See* Dkt. 76, at ¶ 29; Dkt. 82, at 3.) The closest the Union comes to alleging an impasse can be found in its assertion that Rush refuses to recognize its obligation under the Agreement to submit any disputed bargaining issues to interest arbitration.[5] (*See* Dkt. 76, at ¶¶ 30-35.) For the purposes of the LMRA, courts have found that an employer's refusal to recognize an agreement can constitute a contract violation where, for

---

[4] Negotiations between the parties involve two types of agreements. In 1967, the parties negotiated the Election Agreement, otherwise known as the Supplemental Agreement, which provides terms that determined the initial formation of the Union and guide subsequent elections and collective bargaining agreement negotiations. (*See* Dkt. 76-1, Ex. A.) *See Chicago Typographical Union*, 935 F.2d at 1507. The collective bargaining agreements, otherwise known as Main Agreements, have been negotiated in succession in the more than forty years since the original Election Agreement and establish among other provisions the substantive employment terms and conditions between Rush and its employees who are represented by the Union. (*See* Dkt. 76-3, Ex. C.) *See id.* These pleadings dispute the applicability of the 1967 Election Agreement to the parties' present collective bargaining negotiations to form a CBA pursuant to the addition of the PCTs. (*See* Dkt. 82; Dkt. 85.)

[5] Here, the Court analyzes whether Rush can be compelled to submit to interest arbitration, where a union and employer rely on arbitration to determine the content of their CBA when negotiations break down, which is distinct from grievance arbitration, where parties submit disputes to an arbitrator arising from an existing CBA. *See Chicago Typographical Union,* 935 F.2d at 1507.

example, the employer refuses to implement agreed-upon wage increases and bonuses. *See e.g.*, *T&J Meat Packing, Inc. v. Serv. Emps. Int'l Union, Local 1, AFL-CIO*, No. 04 C 1475, 2005 WL 623227, at *3-4 (N.D.Ill. Mar. 16, 2005). Yet, plaintiffs cannot claim a contract violation by alleging that the defendant "is violating [a] valid contract in not recognizing it." *See e.g.*, *Chicago and Northeast Ill. Dist. Council Carpenters v. GDCNI/CAWCC*, No. 01 C 6097, 2002 WL 237972, at *5 (N.D.Ill. Feb. 19, 2002). Plaintiffs must point to specific provisions of the contract that have been violated rather than making a circular argument that the defendant has violated a valid contract by refusing to acknowledge its validity. *See e.g.*, *id.*

The Union alleges that Rush violates the Election Agreement by refusing to acknowledge its application to their present CBA negotiations over the PCTs, but nowhere does the Election Agreement require Rush merely to acknowledge its obligation to submit disputed issues to interest arbitration. (*See id.*) Rather, the Agreement obligates Rush to recognize its obligations in practice by submitting disputes to arbitration in the event of impasse. (*See* Dkt. 76-1, Ex. A, ¶¶ IX, X, XI, XII, XIV.) The Union does not point to any present, disputed issue that compels Rush to submit to interest arbitration which Rush, in fact, refuses to submit to interest arbitration. Without this, the Union does not allege any actual violation of the Election Agreement. The parties have a "dispute" in the literal sense that they disagree over the interpretation and application of the Election Agreement. *See Chicago Typographical Union*, 935 F.2d at 1507. But, as the parties agreed in *Chicago Typographical Union*, the obligation to submit to arbitration kicks in when a dispute moves beyond a difference of opinion – which the parties will almost certainly encounter at points throughout the bargaining process – and ripens into "actual controversy" where one party refuses to submit to arbitration and, as provided in paragraph IX of the Election Agreement, "an impasse has been reached." *See id.* (*Id.*, Ex. A, ¶ IX.)

7

Parties can agree to enter interest arbitration where an arbitrator is used to determine the content of an agreement in the event that CBA negotiations break down. *Id.* Even so, "the breakdown of negotiations is thus the event that triggers arbitration." *Id.* In such a case, if parties disagree as to what an existing contract means, "whether their disagreement is arbitrable will therefore depend on whether the arbitration clause authorizes advisory opinions." *Id.* at 1508. "Few arbitration clauses do." *Id.* Here, the Election Agreement provides that "disputes concerning the interpretation, application or violation of this Agreement shall be immediately submitted to binding arbitration," but, the parties qualify this obligation by requiring that this process occurs "as provided in paragraph IX," which first requires impasse. (*Id.*, Ex. A, ¶¶ IX, XIV.) *See id.* The fact that the Agreement explicitly excludes from arbitration those matters that have not reached an impasse overcomes the presumption of arbitration where such a clause is otherwise ambiguous. *See AT&T Tech., Inc.*, 475 U.S. at 650 (internal citations omitted). If, as here, the parties are bargaining, "[t]his suggest[s] that impasse has not been reached." *See id.* (*See* Dkt. 76, at ¶ 29; Dkt. 82, at 3.) The SAC does not allege that Rush refuses to continue bargaining about a disputed issue. (*See* Dkt. 76.) The parties have thus not reached an impasse. Accordingly, the parties need not arbitrate in the circumstances presented. *See id.* at 1510. (*See* Dkt. 76-1, Ex. A.)

The Union argues that the Court should base its analysis on the facts as presented at the time the Union first filed the case because "jurisdiction once gained is not defeated by subsequent events." (Dkt. 85, at 7-8.) *See Chicago Typographical Union*, 935 F.2d at 1508. In its original complaint, the Union indeed alleged that Rush refused to enter into collective bargaining negotiations, as required by the Agreement. (*See* Dkt. 1, at 5, ¶ 17.) However, an amended complaint becomes the operative complaint and thus renders the original complaint

void. *See Flannery v. Recording Indus. Assoc. of Am.*, 354 F.3d 632, 638 (7th Cir. 2004). Since its original complaint, the Union has filed a First and Second Amended Complaint. (*See* Dkt. 19; Dkt. 76.) The Union's SAC therefore becomes the operative complaint. *See id.* The Union's SAC acknowledges that, as of August 30, 2016, Rush "agreed to bargain with the Union" regarding the CBA for the PCTs. (*See* Dkt. 76, at ¶ 30.) Based on the facts as alleged in the SAC, the Court has no reason to believe that Rush is refusing to bargain with the Union over its Agreement and therefore cannot infer that the parties have reached an impasse constituting a violation of an existing agreement for the purposes of LMRA jurisdiction. *See* 29 U.S.C. § 185(a); *Chicago Typographical Union*, 935 F.2d at 1510; *Textron*, 523 U.S. at 657; *Sign-Craft, Inc.*, 864 F.2d at 501. (*See id.*; Dkt. 76-1, Ex. A, ¶¶ IX, XIV.)

## II. Jurisdiction to Compel Arbitration Pursuant to the Declaratory Judgment Act

In Count II of the SAC, the Union also asks the Court for relief pursuant to the Declaratory Judgment Act. (Dkt. 76, at 7, ¶ 35.) Courts have the authority to grant parties declaratory relief in Section 301 suits. *See* 28 U.S.C.A. § 2201(a); *Newell Operating Co. v. Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W.,* 532 F.3d 583, 590 (7th Cir. 2008), overruled on other grounds by *NewPage Wisconsin Sys. Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Servs. Workers Int'l Union, AFL-CIO/CLC et al.*, 651 F.3d 775 (7th Cir. 2011) (internal citations omitted). However, the Declaratory Judgment Act does not provide an independent grant of jurisdiction. *Id.* at 587 (citing *Rueth v. EPA*, 13 F.3d 227, 231 (7th Cir. 1993) (quoting 28 U.S.C. § 2201(a)). Declaratory relief must be predicated on subject matter jurisdiction provided by another statute. *Id.* Because of this, for a litigant to enjoy jurisdiction that permits declaratory relief in a suit over a CBA dispute pursuant to the LMRA, the suit must still present a controversy constituting a

contract "violation" under Section 301. *See id.* (internal citations omitted); *NewPage Wisconsin Sys. Inc.*, 651 F.3d at 776-79; *J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers*, 398 F.3d 967, 973 (7th Cir. 2005). Since the Court has determined that no impasse has occurred, the Court does not have jurisdiction over the controversy raised in this suit under Section 301 of the LMRA, and therefore, has no jurisdiction to provide the declaratory relief sought by the Union in Count II. *See supra*, § I; 28 U.S.C.A. § 2201(a); *Newell Operating Co.*, 532 F.3d at 590; *NewPage Wisconsin Sys. Inc.*, 651 F.3d at 776-79; *J.W. Peters, Inc.*, 398 F.3d at 973.

## CONCLUSION

Because the Union does not allege facts sufficient to provide subject matter jurisdiction for this suit under Section 301 of the LMRA, Rush's Motion to Dismiss pursuant to Rule 12(b)(1) [81] is granted without prejudice. The parties' Cross-Motions for Summary Judgment [58, 60] are rendered moot and therefore dismissed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 12/30/2016